IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DARNELL R. SMITH | § | |
|     TDCJ-ID #745233 | § | |
| V. | § | C.A. NO. C-02-548 |
| | § | |
| DR. ALLAN PINCHBACK, ET AL. | § | |

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 111). Plaintiff has not filed a response in opposition.[1] After considering the record, motions, affidavits, and documentary evidence, the Court grants defendants' motion for summary judgment and dismisses plaintiff's claims with prejudice.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Plaintiff consented to the jurisdiction of the magistrate judge, and by Order of Reference entered May 19, 2005, the case was reassigned to the undersigned. (D.E. 104.)

**III.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the McConnell Unit in Beeville, Texas. In his *pro se* complaint, plaintiff sued McConnell Unit assistant warden Eileen Kennedy and two dentists: Dr. Allan Pinchback and Dr. Robert Smith. On March 3, 2003, the Court dismissed plaintiff's supervisor liability claims against Warden Kennedy and retained plaintiff's Eighth Amendment claims against Dr. Pinchback and Dr. Smith. (D.E. 18).

---

[1] Pursuant to the May 19, 2005 Scheduling Order, the deadline for filing a response to a dispositive motion was July 18, 2005. See (D.E. 105). Plaintiff has not filed a response, or moved for an extension of time to file a response. Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

Plaintiff claims that Dr. Pinchback and Dr. Smith were deliberately indifferent to his serious medical needs from July 2002 to July 2003 because they would not treat his painful, decaying teeth until he passed a plaque brush test that measures acceptable oral hygiene. (D.E. 1, at 3). Defendants move for summary judgment on the grounds that plaintiff was never denied care for a painful or serious dental problem. (D.E. 111). In addition, both defendants have raised the defense of qualified immunity. Id.

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following evidence:

- App. 1:    Plaintiff's Dental Health Record;
- App. 2:    TDCJ Health Services Policy E-36.1 "Dental Treatment Priorities"; and
- App. 3:    Affidavit of Dr. Albert D. Wells, D.D.S., CCHP.

The following facts are not in dispute:

The TDCJ Health Services Policy E-36.1, effective October 1995, and revised July 2002, and entitled "Dental Treatment Priorities," prioritizes dental treatments into five categories: Emergency (Priority 1), Interceptive (Priority 2), Intermediate Rehabilitative (Priority 3), Routine Rehabilitative (Priority 4), and Complete (Priority 5). (D.E. 111, App. 2 at 11). Only a dentist may assign a priority. Id.

On July 29, 2002, plaintiff submitted a sick call request complaining of a decaying wisdom tooth. (D.E. 1 at 3); (D.E. 111, App. 1 at 1). On July 30, 2002, plaintiff was seen by Dr. Pinchback who noted that plaintiff's wisdom tooth number one was "crumbling," but that plaintiff had no pain upon percussion. (D.E. 111, App.1 at 1). Dr. Pinchback also noted that plaintiff had mild periodontal disease with no complaints of pain. (D.E. 111, App.1 at 1). Plaintiff's plaque

index score was 100.[2]  Id.  Dr. Pinchback's plan was to improve plaintiff's plaque index score to 20 or below and to extract wisdom tooth number one.  Id.  Plaintiff was instructed in proper brushing and flossing techniques.  Id.

On August 27, 2002, plaintiff submitted a sick call request complaining of a toothache. (D.E. 1, at 4); (D.E. 111, App.1 at 1).  On August 28, 2002, plaintiff was seen by Dr. Smith who noted pain on percussion of wisdom tooth number one.  (D.E. 111, App.1 at 1).  Dr. Smith extracted plaintiff's wisdom tooth number one, and plaintiff was instructed on oral hygiene and given floss.  (D.E. 1, at 4); (D.E. 111, App.1 at 1).

On August 30, 2002, plaintiff submitted a sick call request to take the plaque brush test. (D.E. 111, App.1 at 1).  On October 7, 2002, plaintiff was administered the plaque test.  (D.E. 1, at 4); (D.E. 111, App. 1 at 1).  Plaintiff's plaque index score was 100.  (D.E. 111, App.1 at 1). Plaintiff was instructed again on proper oral hygiene and given floss.  Id.

On December 13, 2002, plaintiff filed this lawsuit.  (D.E. 1).

On January 10, 2003, plaintiff submitted a sick call request complaining of a toothache. (D.E. 111, App.1 at 1).  On January 13, 2003, plaintiff was seen by Dr. Pinchback who found a cavity at tooth number 31, but noted no pain upon percussion.  Id.  Dr. Pinchback performed a sedative filling of tooth number 31.  Id.  At this visit, plaintiff's plaque index test was 39.  Id.

On March 12, 2003, plaintiff requested dental floss.  (D.E. 111, App. 1 at 2).  Plaintiff was advised that, due to budget cuts, floss was no longer provided, but that he could purchase floss at the commissary.  Id.

---

[2] Defendants state that an index of 100 means that 100% of plaintiff's tooth surfaces are covered in plaque.  To pass the plaque test, the index score must be 20.  Plaintiff does not refute these definitions.

On July 14, 2003, plaintiff submitted a grievance complaining of severe dental pain. (D.E. 111, App. 1 at 3). X-rays revealed a cavity at tooth number three, and tooth number sixteen had simple caries. Id. Dr. Pinchback noted that the filling for tooth number 31 was in place and there was no pain on percussion. Id. Dr. Pinchback filled tooth number three, and scheduled plaintiff for routine follow-up care. Id. Dr. Pinchback assigned plaintiff an ending priority of 4. Id.

On September 18, 2003, plaintiff reported to Dr. Pinchback for a plaque index appointment. (D.E. 111, App.1 at 4). Plaintiff passed the test with a 17% plaque index. Id.

On October 28, 2003, plaintiff was seen by Dr. Pinchback for restorative treatment. (D.E. 111, App.1 at 6-7). X-rays revealed caries on tooth number two, tooth number 31, and tooth number 32. Id. Plaintiff's cavities were filled. Id. Dr. Pinchback assigned plaintiff an ending priority of 4. Id.

On November 13, 2003, plaintiff was seen by Dr. James Reveley for preventive and routine dental care, including a full mouth debridement. (D.E. 111, App.1 at 8). Dr. Reveley assigned plaintiff a priority of 4. Id.

On November 20, 2003, plaintiff was seen by Dr. Pinchback for restorative treatment of tooth number sixteen. (D.E. 111, App.1 at 9). This procedure was assigned a priority of 4.

On November 21, 2003, plaintiff was seen by dental staff for instruction on brushing and flossing. (D.E. 111, App.1 at 10). No cavities were found and plaintiff's gums were strippled and pink. Id. Plaintiff's ending patient priority score was 4.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant,

5

summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

**A.    Claims against defendants in their official capacities.**

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

Plaintiff does not purport to sue either defendant in his official capacity. See (D.E. 1, at 2-3). However, to the extent plaintiff's complaint could be read to sue defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.

**B.    Deliberate indifference to serious medical needs.**

Plaintiff claims that Dr. Pinchback and Dr. Smith were deliberately indifferent to his serious medical needs when they denied him dental care and required that he pass the plaque index

test before providing treatment for his wisdom tooth. (D.E. 1, at 3). Plaintiff complains that he told Dr. Pinchback on July 30, 2002, that he could not eat or drink without severe pain, and that he was in continuous pain day and night due to his "crumbling" wisdom tooth. (D.E. 1, at 3). Plaintiff claims that Dr. Pinchback refused to treat him throughout August 2002, and that he remained in constant pain until the tooth was extracted on August 29, 2002. (D.E. 1, at 4).

As the Supreme Court has established, "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle, 429 U.S. at 104). To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. In order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment. Id. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. Domino, 239 F.3d at 756. A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998).

### 1. Dr. Smith

Under the circumstances of this case, plaintiff's claim of delayed treatment fails to state a claim of deliberate indifference.  First, as to defendant Dr. Smith, plaintiff points to no evidence to demonstrate that Dr. Smith was aware of a serious medical need and ignored that risk.  The summary judgment evidence shows that Dr. Smith saw plaintiff on August 28, 2002, and extracted tooth number one at that time.  (D.E. 111, App. 1 at 1).  In fact, there is no indication in plaintiff's dental health record that he was seen by Dr. Smith prior to or after the extraction of tooth number one.  Moreover, there is no evidence that Dr. Smith ever required plaintiff to take or pass the plaque test prior to being treated.  Dr. Smith is entitled to summary judgment in his favor on plaintiff's claim of deliberate indifference.

### 2. Dr. Pinchback

Plaintiff claims that Dr. Pinchback was deliberately indifferent to his serious medical needs because he saw plaintiff on July 30, 2002, and observed that plaintiff's wisdom tooth number one was "crumbling," but refused to treat him.  In fact, there is no evidence that Dr. Pinchback refused to treat plaintiff.  Dr. Pinchback examined plaintiff on July 30, 2002, and noted that plaintiff had mild periodontal disease with no complaints of pain.  (D.E. 111, App. 1 at 1).

Plaintiff's plaque index score was 100, indicating that his teeth were covered in plaque. Id. Dr. Pinchback's plan was to improve plaintiff's oral hygiene prior to extracting tooth number one. Id. The fact that plaintiff disagreed with Dr. Pinchback's plan and course of treatment does not state a constitutional violation. Norton, 122 F.3d at 292.

Moreover, plaintiff's allegation of unremitting, continuous pain is belied by the records. Plaintiff first complained of his decaying wisdom tooth on July 29, 2002, and was seen the following day. (D.E. 111, App. 1 at 1). Dr. Pinchback noted that plaintiff had no pain at that time, and his plan was to extract tooth number one following proper hygiene instruction. Id. Thereafter, plaintiff did not submit a sick call request, or otherwise complain of dental pain until August 27, 2002. Id. He was then seen on August 28, 2002, and Dr. Smith extracted tooth number one. Id. From July 31 through August 26, 2002, there is no evidence in plaintiff's contemporaneous dental records to suggest that plaintiff complained to dental staff of unremitting pain. He did not submit daily sick call requests, request medication, or complain that he could not eat or drink. There is nothing in plaintiff's dental records to suggest that tooth number one was infected or actively causing pain. There are no notations that plaintiff's face or mouth were swollen or any other indications that his tooth pain was a medical emergency. Indeed, even if plaintiff could establish that Dr. Pinchback misdiagnosed his dental condition, at most, plaintiff would state a claim of negligence, which is not actionable under § 1983. Domino, 239 F.3d at 756.

Finally, the course of treatment recommended by Dr. Pinchback is consistent with the TDCJ dental policies. According to Dr. Albert Wells, the Dental Director for the University of Texas Correctional Managed Care System, "the efficacy of routine care is badly compromised if patients do not maintain good oral hygiene." (D.E. 111, App. 3 at ¶ 4). The determination of treatment priority is left to the discretion of the dentist. (D.E. 111, App. 2 at 11). Based on the

facts of this case, given plaintiff's poor plaque score on July 30, 2002, it was not unreasonable for Dr. Pinchback to postpone the extraction until plaintiff had been educated on proper oral hygiene. Moreover, there is no evidence that the delay between Dr. Pinchback's determination that tooth number one should be extracted and its extraction on August 28, 2002 caused any harm because tooth number one could not be saved.

## VI.  CONCLUSION

Plaintiff's dental records evidence that he was seen by dental staff expeditiously when requested and on a regular basis for his routine dental needs. Over an eighteen month period, plaintiff was seen seven times by Dr. Pinchback and once by Dr. Smith. His care included x-rays, extraction of tooth number one, and the filling of cavities. In addition, his teeth were cleaned and he was instructed on proper oral hygiene. This instruction was successful as evidenced by plaintiff's plaque index score dropping from 100 to 17. There is no allegation of secondary infections or further tooth loss. Based on the evidence presented, no reasonable juror could find that Dr. Pinchback or Dr. Smith was deliberately indifferent to plaintiff's serious medical needs.

Accordingly, defendants' motion for summary judgment, (D.E. 111), is GRANTED, and plaintiff's claims are dismissed with prejudice. The September 21, 2005 trial setting is cancelled.

ORDERED this 22nd day of July 2005.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE